UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.        )<br>)<br>PATRICK J. DOLAN,       )<br>)<br>    Defendant    ) | Criminal No. 1:25CR10315-1 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Patrick J. Dolan was an attorney who stole a significant amount of money entrusted to him. The amount of money Dolan stole was significant not just because it was over $2 million. The amount of money Dolan stole was significant because it was nearly everything Dolan's two victims had. Dolan used his position of trust to take money he was supposed to be keeping for the benefit of his clients and other litigants, and he used that money to support a lifestyle he could not otherwise afford.

For the reasons explained below, Dolan deserves a sentence of 51 months in prison.

**I.    Patrick J. Dolan's Criminal Conduct**

Dolan was admitted to practice law in Massachusetts in 1993. As a lawyer with a law office in Massachusetts who held client funds, Dolan was required to and did have an IOLTA account (the IOLTA Account) to hold client trust funds. S.J.C. Rule 3:07, Massachusetts Rules of Professional Conduct, Rule 1.15(e)(5). Dolan was required to hold the funds in his IOLTA Account with the care required of a professional fiduciary, for the exclusive benefit of his clients and others for whom he held those funds.

1

      A.      <u>Victim 1</u>

In 2018, Dolan represented a client (referred to in the Information as Client 1) in a Middlesex Superior Court lawsuit brought by Victim 1 over a family trust. Between 2018 and 2022, approximately $2,000,372.55 was deposited into the IOLTA Account, and Dolan was ordered to hold those funds in escrow, pending the outcome of the family trust lawsuit. Instead, Dolan started spending the money on himself and his family almost immediately after the money was deposited in the IOLTA Account. Ultimately, between November 2018 and May 2024, Dolan stole ***all of the money he was holding in his IOLTA Account*** pending the outcome of the family trust lawsuit brought by Victim 1.

Among other things, Dolan transferred over $759,000 of these funds to himself and his family members, often by running the funds through shell companies that Dolan had created to hide his theft of funds from the IOLTA Account. Dolan used an additional $188,000 of the stolen funds to make tuition and student loan payments for the benefit of his children and stepchildren; over $28,000 of the stolen funds to buy a Jeep Wrangler for his son; over $36,000 of the stolen funds to make mortgage, landscaping and HVAC payments for his and his family's homes; and at least $5,000 of the stolen funds for his wife's cosmetic surgery.

During the over five-year litigation, Dolan repeatedly assured the Middlesex Superior Court, Client 1, and counsel for Victim 1 that the funds were being held in escrow, when in fact Dolan had stolen the funds. In February 2023, after an eight-day trial, Middlesex Superior Court Judge Douglas Wilkins entered judgment in favor of Victim 1 against Dolan's client, in an amount over $4.5 million. Dolan's client appealed, the Massachusetts Appeals Court affirmed the decision in favor of Victim 1 in May 2024.

Meanwhile, after judgment entered and pending an appeal, Victim 1's counsel requested documentation of the amounts held in Dolan's IOLTA Account. In response, Dolan emailed Victim 1's counsel a forged bank statement purportedly reflecting the amount held in escrow and a fake law firm reconciliation statement designed to mislead opposing counsel. Based on those forged documents, Victim 1 agreed to delay the transfer of funds from Dolan's IOLTA Account to the escrow account of a new Court-appointed trustee by 90 days.

Nearing the end of the 90-day extension, Dolan agreed that he would transfer the funds on April 5, 2024, and the new trustee sent Dolan wire instructions. Dolan obviously failed to wire the funds on April 5, but instead of admitting he had stolen the funds, he gave the trustee several excuses and emailed the trustee a fake wire transfer receipt to buy himself more time.

On May 15, 2024, more than five years after he started stealing the escrowed money from his IOLTA Account, Dolan voluntarily disclosed his theft to the Board of Bar Overseers (the BBO) and the Massachusetts Attorney General's Office (the AGO). *See* Ex. 1. However, Dolan only made this disclosure ***after*** Victim 1 filed a Verified Complaint for Contempt against Dolan in Middlesex Superior Court, on April 24, 2024. More significantly, Dolan ***only*** disclosed his theft of Victim 1's funds to the BBO and the AGO—had the Federal Bureau of Investigation (the FBI) not conducted a thorough investigation, it is quite possible Dolan's theft from Victim 2 would still remain Dolan's dirty little secret, given the circumstances of that theft described below.

B.  *Victim 2*

In 2017, Dolan began representing Victim 2 in connection with a dispute over a family business that resulted in a $200,000 settlement payment to Victim 2 in 2019. Victim 2 was an 89-year old woman with dementia, and Dolan communicated largely with Victim 2's family member, to whom Victim 2 had granted a durable power of attorney. After the settlement, Dolan convinced Victim 2 and her family member to create a supplemental needs trust (the Trust), with Dolan as the sole trustee, to ensure the rest of the family could not take the $200,000 in settlement funds back from Victim 2. Believing Dolan's threat that this was a real possibility, Victim 2 and her family member agreed, and Dolan created the Trust which specified that all payments from the trust were to be made for the benefit of Victim 2. Dolan opened a bank account for the Trust, to which Dolan had access, and deposited $200,000 in settlement funds into the account.

Shortly thereafter, in March 2020, Dolan used $87,500 of Victim 2's funds to make a downpayment on a house in Haverhill, Massachusetts. Dolan titled the house in his wife's name, but he lived there with his wife and family for several years before his fraud schemes were discovered. Meanwhile, Dolan sent Victim 2's family member emails with forged bank statements and falsified accounting records misrepresenting to them that all of the funds deposited into the Trust's account either remained in the account or had been used for the benefit of Victim 2. Although Dolan himself made payments to Victim 2's Trust account totaling $65,040 before March 2024, he never finished repaying the stolen funds, and Dolan still owes $22,460 to Victim 2.

## II. U.S. Sentencing Guidelines Calculation

The government agrees with the United States Sentencing Guidelines (USSG) calculation set forth by Probation in the Final Presentence Report (the PSR):

| SENTENCING GUIDELINES CALCULATIONS 18 U.S.C. § 1343 (Counts One-Four) | |
|---|---|
| Base Offense Level (U.S.S.G. § 2B1.1(a)(1)) | 7 |
| Loss between $1,500,000 and $3,500,000 (U.S.S.G. § 2B1.1(b)(1)(I)) | +16 |
| Offense Involved Substantial Financial Hardship to One or More Victims (U.S.S.G. § 2B1.1(b)(2)(A)(iii)) | +2 |
| Abuse of Position of Private Trust (U.S.S.G. § 3B1.3) | +2 |
| *Adjusted Offense Level* | 27 |
| | |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1(a) and (b)) | -3 |
| | |
| **TOTAL OFFENSE LEVEL** | **24** |

## III. The 3553(a) Factors

a. The Nature and Circumstances of the Offense Warrant a 51-Month Sentence

Patrick Dolan's crimes were serious, and they deserve serious punishment. The total loss resulting from Dolan's fraud is *over $2 million*. But Dolan's fraud is not just a financial crime, it was a calculated and deliberate betrayal of trust that inflicted severe harm on Victims 1 and 2. Victim 2 was Dolan's client, and Victim 2 and her family member trusted Dolan to provide sound advice and administer her Trust in Victim 2's best interest. Victim 1 was a litigant who trusted that Dolan would obey Court orders and hold disputed funds in escrow until a final decision had been rendered. Dolan abused the trust placed in him by Victims 1 and 2, and he also abused the trust of Client 1, the Middlesex Superior Court, Victim 1's counsel, and Victim 2's family member representative, all of whom believed that Dolan would comply with his fiduciary and legal duties, and at the very least not commit fraud.

Dolan's crimes were not a momentary lapse in judgment, one bad choice, one error in judgment, or one mistake. He stole from Victim 1 hundreds of times over the course of at least

5

four years, and he stole from Victim 2 when he wanted to buy a new house but had run out of Victim 1's money. Dolan would have continued to steal from clients and others who trusted him to hold their money had he not been caught. And it is important to note that *he was caught*. The government expects that Dolan will highlight his May 2024 self-disclosure to the AGO and the BBO, but he only disclosed his fraud after the jig was up. But even then, he only disclosed what was laid bare for all to see in the motion for contempt, *i.e.*, his theft from Victim 1. He did not self-disclose his theft from Victim 2, because no one had caught that theft yet.

Moreover, Dolan's theft was driven not by necessity, but by greed. Dolan was a lawyer who could have rented an apartment with his new wife and worked and pinched pennies to come back from any financial distress caused by his divorce from his first wife. He could have sent his children and stepchildren to state schools. Or declined to buy his son a $28,000 Jeep. Or refused plastic surgery. Or mowed his own lawn. These were not necessities, they were luxuries. Given the nature and circumstances of Dolan's fraud, he deserves a significant prison sentence.

    b. <u>Patrick Dolan's History and Characteristics Warrant a 51-Month Sentence</u>

Dolan's history and characteristics, too, justify a 51-month sentence. He had a "normal" upbringing and a "solidly middle class" family, he attended and graduated from college and law school, and he had a successful law practice. *See* PSR at ¶¶ 52, 54, 61, 64. He has had many advantages in his life, advantages that many defendants who come before this Court for sentencing have lacked. In spite of those privileges, he stole from people who trusted him, including an elderly client who may never have discovered that Dolan stole her money if the FBI had not examined Dolan's bank records.

To the extent Dolan may argue that his lack of criminal history, legal career prior to his fraud, commitment to his elderly mother, or the collateral consequences associated with this

conviction support a downward variance, his claims are without merit. The Guidelines generally prohibit consideration of socioeconomic status, successful employment history, family responsibilities and reputational collateral consequences in fashioning a sentence. *See* 28 U.S.C. § 994(d) ("The Commission shall assure that the guidelines and policy statements are entirely neutral as to . . . socioeconomic status of offenders."); *see also* U.S.S.G. § 5H1.2 (vocational skills and education not ordinarily relevant); U.S.S.G. § 5H1.5 (employment record not ordinarily relevant); U.S.S.G. § 5H1.6 (family ties and responsibilities not ordinarily relevant); U.S.S.G. § 5H1.10 (socioeconomic status not relevant). Indeed, courts have "repeatedly expressed a distaste for sentencing that reflects different standards of justice being applied to white and blue collar criminals," based on the need to deter large-scale fraud and the possibility that a lenient sentence may "undermine[] public confidence in whether the justice system is doing equal right to the poor and the rich as our oath requires." *United States v. Hoffman*, 901 F.3d 523, 556-57 (5th Cir. 2018) (internal citation, quotation marks, and alterations omitted); *see also, e.g.*, *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (emphasizing importance of "the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white-and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail").

Patrick Dolan was a lawyer. He knew right from wrong, he knew the rules of IOLTA accounts and supplementary needs trusts, and he understood his fiduciary duties to Victims 1 and 2. Given Dolan's history and the circumstances of his fraud scheme described above, a 51-month prison sentence is appropriate.

      c.   A Sentence of 51 Months Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Just Punishment, and Serves the Goals of Adequate Deterrence

The need for general deterrence also weighs in favor of the government's sentencing

recommendation because Dolan's position as a trusted lawyer made his theft difficult to detect, as evidenced by the over four years that went by before his scheme was uncovered. A meaningful sentence is necessary to deter other lawyers from engaging in this kind of theft, particularly from clients and litigants to whom they owe fiduciary duties.

Moreover, a sentence of 51 months fits squarely within the range of reasonable sentences imposed for similar conduct—that is, lawyers stealing from clients and others who trusted them. For example, in 2012, Judge Saris sentenced former lawyer Craig Martin to 51 months in prison for defrauding mortgage companies of over $2.8 million, even though Martin did not personally profit from his fraud. *United States v. Martin*, 1:11-cr-10390-PBS (Docket No. 25). In 2020, Judge Mastroianni sentenced former lawyer Philip Williams to 66 months in prison for defrauding his clients and others of over $3.5 million. *United States v. Williams*, 3:19-cr-30016-MGM (Docket No. 105).

A sentence of 51 months is just punishment for Patrick Dolan's crimes. It is a sentence that promotes respect for the law, and that will serve the goals of specific and general deterrence.

### IV. CONCLUSION

For the foregoing reasons and those outlined in the PSR, the government recommends a sentence of 51 months' imprisonment, three years of supervised release, restitution of $2,000,372.55 to Victim 1 and $22,460 to Victim 2, forfeiture, and a $400 special assessment.

LEAH B. FOLEY<br>
United States Attorney

By:   */s/Kristina E. Barclay*
      KRISTINA E. BARCLAY
      Assistant United States Attorney

Dated: March 4, 2026

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was sent electronically to counsel of record for the defendant.

*/s/Kristina E. Barclay*
Kristina E. Barclay
Assistant United States Attorney

Date: March 4, 2026